## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLENA MEYERS<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ALLIED UNIVERSAL and<br>RODNEY J. SMITH, INDIVIDUAL<br>　　　　Defendants. | Case No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Darlena Meyers (hereinafter, "Plaintiff") moves the Court for entry of judgment in her favor against the named Defendants and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1.　This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981") and Title VII, the Family Medical Leave Act and the Americans with Disabilities Act (hereinafter, "ADA"). Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

2.      Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

3.      Plaintiff brings this action against her former employer, Allied Universal, (hereinafter "Allied" or "Defendant"). Allied is a Pennsylvania company located at 75 Houcks Rd, Suite 300, Harrisburg, PA 17109.

4.      Defendant Rodney J. Smith ("Mr. Smith" or "Defendant") is an adult male and upon information and belief, resides within the Commonwealth of Pennsylvania. Mr. Smith is employed by Universal as Client Manager. Mr. Smith is in the supervisory line of succession relative to the Plaintiff and participates in the decisions to enforce discipline and/or to terminate employees including the Plaintiff.

5.      Plaintiff Darlena Meyers (hereinafter "Plaintiff") is an adult, African American, female who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and was employed by Universal.

**UNDERLYING FACTS**

6.      Plaintiff worked for Defendant from November 2018 to the date of her termination on December 30, 2019, as a specialty detail security guard on the Pixelle Specialty Solutions grounds in Spring Grove, PA.

7.  On or about July 5, 2019, Plaintiff received a text from her supervisor(s) discussing the schedule and acknowledging that she preferred first shift. (See Text messages in full as per **Plaintiff's Exhibit A**).

8.  On or about August 25, 2019, Plaintiff received a text from Catherine "Kathy" Stevens, the General Manager, regarding scheduling which permitted her to work from 7:00 A.M. for $13.00 per hour. (See Plaintiff's Exhibit A)

9.  In a follow up text, Ms. Stevens explained that they needed coverage from 5:00 A.M. until 7:00 P.M. At this time, the Plaintiff reiterated to Ms. Stevens that she did not like to drive in the dark as she had told her prior. Thereafter, Ms. Stevens notified the Plaintiff that she would get someone else to cover from 5:00 P.M. to 7:00 P.M. knowing that the Plaintiff experienced anxiety and panic when having to work or drive at night. (See Plaintiff's Exhibit A)

10. On September 19, 2019, Ms. Stevens was able to find a first shift assignment for the Plaintiff. On or about September 21, 2019, Plaintiff began working from 6:00 A.M. to 6:00 P.M. (See Plaintiff's Exhibit A)

11. Thereafter, on October 1, 2019, the Plaintiff texted Ryan LNU, her site supervisor, and PSS Security Supervisor, to tell him that her hours for pay had been reduced on her paycheck although she had worked more hours than she was being paid for. On October 3, 2019, Ryan stated that she could not fix the check,

but it would have to go through corporate who would have to cut her a separate check for the discrepancy. (See Plaintiff's Exhibit A)

12.   On or about October 4, 2019, Plaintiff reached out to Ryan again to discuss discrepancies in her pay. Further, other employees that were supposed to fill in for the nighttime hours failed to show up on time resulting in the Plaintiff being forced to work and drive after dark.  (See Plaintiff's Exhibit A)

13.   On October 13, 2019, Plaintiff contacted Ms. Stevens via text to let her know that she was having issues with her hours and pay being "messed up."  Plaintiff also raised concerns about nighttime hours when other employees failed to show up to cover those hours and she was forced to do so despite her mental health condition. Plaintiff indicated that she was a reliable worker and hoped that Ms. Stevens could find her a new position.  During the text Ms. Stevens agreed that the Plaintiff was an "excellent" worker and told her that she should enjoy her vacation and they would discuss it when she came back from vacation. (See Plaintiff's Exhibit A)

14.   On October 18, 2019, Plaintiff notified Ms. Stevens again about the scheduling issues at the location where she was working and once again asking to be moved saying they had messed up her pay and communication was very bad.  Thereafter, Ms. Stevens texted the Plaintiff and said she would make other

arrangements, but the Plaintiff would have to stay in the position until Allied found other coverage.  (See Plaintiff's Exhibit A)

15.     On October 29, 2019, Plaintiff met with her Outpatient Therapist at Pennsylvania Counseling Services, York Psychiatric reporting that she was experiencing anxiety and panic which had become more acute when she was driving at night and being around large groups of people. She also shared that the distress had impeded her ability to work. (See **Plaintiff's Exhibit B**)

16.     Also, on October 29, 2019, Plaintiff texted Ms. Stevens telling her that she was at her mental health doctor's appointment and stated that her therapist wanted to speak with her (Ms. Stevens) concerning the driving in the dark issue, emphasizing that she could no longer drive in the dark. Plaintiff stated that Brittany Rush was her therapist's name and gave Ms. Stevens the number and her extension. (See Plaintiff's Exhibit A)

17.     Thereafter, Plaintiff contacted Ms. Stevens again, on or about October 30, 2019, to inform her that she could not drive in the dark and that she had spoken to her site supervisor "Ryan" about her need for a first shift assignment. Plaintiff also told Ms. Stevens that her paycheck was 4 hours short again. (See Plaintiff's Exhibit A)

18.     On or about November 8, 2019, Plaintiff again reached out to Ms. Stevens stating that she was waiting on her to give her a new site which would conform

with her doctor's orders. Thereafter, Ms. Stevens told Plaintiff she had another position, but it would result in a cut in pay to $11.00 per hour instead of the $13.00 per hour Plaintiff had been receiving. However, at no time did Ms. Stevens, Allied, or any of its agents reach out to speak with Plaintiff's therapist. (See Plaintiff's Exhibit A)

19.    On December 26, 2019, Plaintiff contacted Ms. Stevens to find only out that Ms. Stevens no longer worked for Allied Universal, however, Ms. Stevens replied that she would pass on the information for Mr. Smith to contact Plaintiff. (See Plaintiff's Exhibit A)

20.    Critically, on or about late December 2019, in another text with Ryan, Plaintiff discussed the fact that she could not drive in the dark anymore, saying "Doctor's Orders!!!" to which Ryan stated, "Yeah I saw it." Then the Plaintiff asked Ryan, "Did you speak with Kathy (Ms. Stevens) because I let her know as well" to which Ryan replied, "You'll most likely hear from Rodney (Mr. Smith – Client Manager) saying I have no first shift position available." (See Plaintiff's Exhibit A)

21.    The Plaintiff sought accommodations through her therapist who prepared a letter for Allied which stated in pertinent part that she had been diagnosed with General Anxiety Disorder and Panic Disorder and that she would require a workplace accommodation. However, at no time thereafter did Allied or its

agents discuss whether Plaintiff was entitled to any form of medical leave, intermittent or otherwise, nor did they accommodate her work schedule.

22.    On December 30, 2019, Plaintiff went to the Allied office in Harrisburg to request a formal meeting with Mr. Smith directly regarding her request for accommodations to drive during the daylight hours due to the high anxiety and panic she had been experiencing from driving and working at night. (See emails as per **Plaintiff's Exhibit C**)

23.    While at Allied, Plaintiff spoke to Warren C. Atkins, HR Coordinator. (See Plaintiff's Exhibit C).

24.    On December 30, 2019, at 2:13 PM, Mr. Atkins contacted Mr. Smith by email. Mr. Smith stated in his email to Mr. Atkins (copying Corey Richardson) at 3:08 PM the same day, "Glad to hear she came to visit. She walked off post at Pixelle. She was to be terminated. She can't work only but daylight hours and expects us to allow her to have a job where she tells us what she will do or not do. Not interested. However, I'll call her." (See Plaintiff's Exhibit C).

25.    Mr. Smith followed up with Mr. Atkins (copying Corey Richardson) in an email on December 30, 2019, at 3:32 PM stating, "She (Plaintiff) was a no call no show at Pixelle. She just blew up on me in the phone. Not interested in her working for us. She can't work the hours she agrees to.  (See Plaintiff's Exhibit C).

26.     On the call referenced earlier, Mr. Smith told Plaintiff that he did have a few daytime specialty detail security guard positions but could not accommodate her because he is afraid to offer those positions to her because of her anxiety and not sure if she might panic in the middle of daytime traffic.

27.     After which he told the Plaintiff that she was no longer active with Allied Universal for a "No Call No Show." Plaintiff was puzzled as to what he could be referring to and questioned Mr. Smith but he could not provide an actual date and time for which she was "No Call No Show." Mr. Smith said he would check and get back to her.

28.     On February 13, 2020, Plaintiff called Mr. Smith's office and left a message asking if she was still active or not with Allied Universal; however, Plaintiff never received a reply.

29.     At no time was Plaintiff ever offered any type of medical leave pursuant to the FMLA nor was anything discussed with her about possible alternatives for medical leave such as intermittent leave due to her serious health condition, anxiety, and panic disorder.

30.     Thereafter, the Defendants did not contact the Plaintiff regarding possible job openings and thus she was terminated.

31.     Plaintiff subsequently filed a dually filed Charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRC") under the work-sharing program on April 30, 2020, which was docketed as 530-2020-03543 on May 6, 2020 (see attached as **Plaintiff's Exhibit D**).

32.    Given that it had been over 16 months since the EEOC filing, Plaintiff's counsel sought a right to sue letter on September 30, 2021, from the investigator, Elizabeth Lewis, who informed counsel on September 30, 2021, that a letter would issue the next day (see email attached as **Plaintiff's Exhibit E**).

33.    The Defendants' actions or inaction are of a continuing nature thus they fall under the doctrine of a continuing violation theory.

34.    Allied is responsible/liable for the actions of its agents under a theory of *Respondeat Superior.*

## COUNT 1
## PHRA DISABILITY DISCRIMINATION
## ALL DEFENDANTS

35.    Plaintiff incorporates herein the previous averments as if fully set forth.

36.    The Plaintiff is a qualified individual with a disability under the PHRA due to anxiety, panic disorder, and Defendants' notice of the same.

37.    The Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

38.    The PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

39.   Plaintiff requested an accommodation pursuant to state and federal law, i.e., modification of work schedules, intermittent medical leave, to drive and work during daylight hours.

40.   Defendant failed to accommodate Plaintiff's disability and instead, it disciplined and terminated Plaintiff when Plaintiff sought accommodations for medical reasons related to Plaintiff's disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 2
## PHRA DISABILITY-HOSTILE WORK ENVIRONMENT
## ALL DEFENDANTS

41.   Plaintiff incorporates herein the previous averments as if fully set forth.

42.   The Plaintiff avers that she is a qualified individual with a disability under the PHRA due to anxiety and panic disorder and Defendant's notice of the same. Additionally, the Plaintiff has been under a physician/therapist's care for disabilities since diagnosis.

43.   The Plaintiff was subject to unwelcomed harassment after Plaintiff sought disability accommodations in 2019 and 2020.

44.    Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment.

45.    Defendant knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and berating Plaintiff due to Plaintiff's conditions.

46.    The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for Plaintiff's claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

**COUNT 3**
**PHRA DISABILITY RETALIATION**
**ALL DEFENDANTS**

47.    Plaintiff incorporates herein the previous averments as if fully set forth.

48.    The PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

49.    The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

50.    Defendant retaliated against the Plaintiff on account of Plaintiff's protected activity when it disciplined, refused to provide a daytime job, and terminated Plaintiff after Plaintiff sought accommodations related to Plaintiff's disability and after Plaintiff opposed the harassment Plaintiff was experiencing when Plaintiff sought daytime working hours, medical leave, or opposed harassment such as reduced pay, scheduling changes, bullying by supervisors and not being offered positions due to Plaintiff's disability.

51.    Furthermore, Plaintiff avers that the Defendant's purported basis to discipline and termination (e.g., no call, no show) is false and erroneous and a pretext for underlying invidious reasons.

52.    As a result, the Plaintiff avers that the Defendant retaliated on account of Plaintiff's protected activity by imposing discipline and discharging Plaintiff without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 4
## ADA DISABILITY DISCRIMINATION
## CORPORATE DEFENDANT

53.     Plaintiff incorporates herein the previous averments as if fully set forth.

54.     The Plaintiff is a qualified individual with a disability under the ADA due to anxiety, panic disorder, and Defendants' notice of the same.

55.     The Plaintiff had a record of disability and/or was regarded as disabled by the Defendants.

56.     The ADA prohibits discrimination in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace.

57.     Plaintiff requested an accommodation pursuant to state and federal law, i.e., modification of work schedules, intermittent medical leave, to drive and work during daylight hours.

58.     Defendant failed to accommodate Plaintiff's disability and instead, it disciplined and terminated Plaintiff when Plaintiff sought accommodations for medical reasons related to Plaintiff's disability.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, punitive relief and all reasonable attorney's fees and costs of litigation.

## COUNT 5
## ADA DISABILITY-HOSTILE WORK ENVIRONMENT
## CORPORATE DEFENDANT

59.   Plaintiff incorporates herein the previous averments as if fully set forth.

60.   The Plaintiff avers that she is a qualified individual with a disability under the ADA due to anxiety and panic disorder and Defendant's notice of the same. Additionally, the Plaintiff has been under a physician/therapist's care for disabilities since diagnosis.

61.   The Plaintiff was subject to unwelcomed harassment after Plaintiff sought disability accommodations in 2019 and 2020.

62.    Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment.

63.   Defendant knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and berating Plaintiff due to Plaintiff's conditions.

64.   The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for Plaintiff's claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not

limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, punitive relief and all reasonable attorney's fees and costs of litigation.

## COUNT 6
## ADA DISABILITY RETALIATION
## CORPORATE DEFENDANT

65.     Plaintiff incorporates herein the previous averments as if fully set forth.

66.     The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

67.     The Plaintiff's requests for an accommodation in the workplace constituted "protected activity" pursuant to state and federal law.

68.     Defendant retaliated against the Plaintiff on account of Plaintiff's protected activity when it disciplined, refused to provide a daytime job, and terminated Plaintiff after Plaintiff sought accommodations related to Plaintiff's disability and after Plaintiff opposed the harassment Plaintiff was experiencing when Plaintiff sought daytime working hours, medical leave, or opposed harassment such as reduced pay, scheduling changes, bullying by supervisors and not being offered positions due to Plaintiff's disability.

69.     Furthermore, Plaintiff avers that the Defendant's purported basis to discipline and termination (e.g., no call, no show) is false and erroneous and a pretext for underlying invidious reasons.

70.     As a result, the Plaintiff avers that the Defendant retaliated on account of Plaintiff's protected activity by imposing discipline and discharging Plaintiff without justification.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering, punitive relief and all reasonable attorney's fees and costs of litigation.

**COUNT 7**
**42 U.S.C.A. § 1981: DISCRIMINATION**
**ALL DEFENDANTS**

71.     Plaintiff incorporates herein the previous averments as if fully set forth.

72.     Plaintiff had a valid contract with the Defendant regarding the responsibilities of the employment relationship.

73.     The Defendant intentionally discriminated against Plaintiff as more fully described above, and more specifically below, due to Plaintiff's race: African American.

74.    Plaintiff's race was a motivating or determinative factor in the decision to terminate Plaintiff's employment.

## COUNT 8
## 42 U.S.C.A. § 1981: RETALIATION
## ALL DEFENDANTS

75.    Plaintiff incorporates herein the previous averments as if fully set forth.

76.    Plaintiff complained of unfair treatment to Plaintiff's supervisors as more fully described above.

77.    Plaintiff was subjected to materially adverse actions by Plaintiff's supervisors in that they continued to harass while Plaintiff sought workplace accommodations Plaintiff and escalated the racially motivated abuse by, *inter alia*, terminating the Plaintiff.

78.    For this reason, Plaintiff avers that there is a causal connection between the Defendants' treatment, statements, and actions and the fact that Plaintiff is African American. Thus, the actions and statements including the termination were motivated by Plaintiff's race.

## COUNT 9
## TITLE VII RACE DISCRIMINATION
## CORPORATE DEFENDANT

79.    Plaintiff incorporates herein the previous averments as if fully set forth.

80.    Plaintiff was employed with the Defendant.

81.   The Defendant intentionally discriminated against Plaintiff through its agents as more fully described above, and more specifically below, due to Plaintiff's race: African American.

82.    Plaintiff's race was a motivating or determinative factor in the decision to demote, discipline and terminate Plaintiff's employment.

## COUNT 10
## TITLE VII RACE RETALIATION
## CORPORATE DEFENDANT

83.   Plaintiff incorporates herein the previous averments as if fully set forth.

84.   Plaintiff complained of unfair treatment to Plaintiff's supervisors as more fully described above.

85.    Plaintiff was subjected to materially adverse actions by Plaintiff's supervisors in that they continued to harass while Plaintiff sought workplace accommodations Plaintiff and escalated the racially motivated abuse by, *inter alia*, terminating the Plaintiff.

86.   For this reason, Plaintiff avers that there is a causal connection between the Defendants' treatment, statements, and actions and the fact that Plaintiff is African American. Thus, the actions and statements including the termination were motivated by Plaintiff's race.

87.   The Defendants retaliated against Plaintiff on account of Plaintiff's protected activity including but not limited to the following:

a.      Assessing discipline upon Plaintiff without cause.

b.      Terminating Plaintiff's employment.

88.    The Defendants' retaliation constitutes an adverse employment action.

## COUNT 11
## PHRA RACE DISCRIMINATION
## ALL DEFENDANTS

89.    Plaintiff incorporates herein the previous averments as if fully set forth.

90.    Plaintiff was employed with the Defendant.

91.    The Defendant intentionally discriminated against Plaintiff through its agents as more fully described above, and more specifically below, due to Plaintiff's race: African American.

92.     Plaintiff's race was a motivating or determinative factor in the decision to terminate Plaintiff's employment.

## COUNT 12
## TITLE VII RACE RETALIATION

93.    Plaintiff incorporates herein the previous averments as if fully set forth.

94.    Plaintiff complained of unfair treatment to Plaintiff's supervisors as more fully described above.

95.     Plaintiff was subjected to materially adverse actions by Plaintiff's supervisors in that they continued to harass while Plaintiff sought workplace accommodations Plaintiff and escalated the racially motivated abuse by, *inter alia*, terminating the Plaintiff.

96.   For this reason, Plaintiff avers that there is a causal connection between the Defendants' treatment, statements, and actions and the fact that Plaintiff is African American. Thus, the actions and statements including the termination were motivated by Plaintiff's race.

97.   The Defendants retaliated against Plaintiff on account of Plaintiff's protected activity including but not limited to the following:

    a.   Assessing discipline upon Plaintiff without cause.

    b.   Terminating Plaintiff's employment.

98.   The Defendants' retaliation constitutes an adverse employment action.

## COUNT 13
## FAMILY AND MEDICAL LEAVE ACT INTERFERENCE

99. Plaintiff incorporates herein the previous averments as if fully set forth.

100.   During Plaintiff's employment with Defendants, Plaintiff experienced anxiety and panic disorder.

101.   Plaintiff's health condition was exacerbated by hostilities experienced at work and after reporting the harassment.

102.   Plaintiff's medical conditions required treatment by a health care provider.

103.   Plaintiff's medical conditions constitute a "serious health condition" as that term is defined under and pursuant to the FMLA.

104.  Defendants were provided with sufficient information to reasonably verify that Plaintiff required treatment by a health care provider for serious health conditions.

105.  At all relevant times, Plaintiff had been employed by the Defendants for at least 12 months and at least 1,250 hours of service during the 12-month period immediately preceding the notice of his need for FMLA.

106.  At all relevant times, the Defendants employed 50 or more employees within 75 miles of Plaintiff's worksite for a period of 20 or more calendar work weeks.

107.  Accordingly, material to this Complaint, the Defendants were a "covered employer" within the meaning of the FMLA and Plaintiff was an "eligible employee" within the meaning of the FMLA.

108.  Plaintiff's medical leave of absence in 2019/2020 were protected absences under the FMLA and its regulations.

109.  Instead, Defendants and its agents disciplined and terminated Plaintiff after workplace accommodations were sought.

110.  The Defendants were required to communicate with the Plaintiff regarding rights under the FMLA including but not limited to the provision of an individualized notice to employees regarding FMLA rights and obligations.

111.  From 2019, Plaintiff provided proper notice of need for FMLA leave on account of serious medical conditions.

112. Defendants failed to provide Plaintiff entitled notice or FMLA leave.

113. Instead, Defendants interfered with Plaintiff's FMLA once it was known of need for leave and/or workplace accommodations, and ultimately, discharged Plaintiff from Plaintiff's job.

114. Defendants possessed no good faith legitimate basis for its actions, the discipline, or discharge of Plaintiff's employment.

115. The discipline and discharge of the Plaintiff's position in conjunction with the notice of need for FMLA constitutes an adverse employment action.

116. Defendants interfered with Plaintiff's rights under the FMLA in one or more ways including but not limited to the following:

   a. Failing to provide timely notice of eligibility or certification requirements for Plaintiff's physician.

117. Defendants willfully violated Section 29 U.S.C. §2615(a)(1) in that it/they interfered with, restrained, and/or denied the exercise or attempt to exercise Plaintiff's rights under the FMLA, as more fully set forth above.

118. Defendants' acts and omissions and conduct as more fully described above were knowing and willful.

119. Defendants' acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis, thereby rendering

Defendants liable for liquidated damages pursuant to the FMLA, and claim is made, therefore.

120.   As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made, therefore.

121.   As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to be reinstated to Plaintiff's position, or to front pay and benefits pursuant to the FMLA, and claim is made, therefore.

122.   Plaintiff is further entitled to recover attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made, therefore.

**COUNT 14**
**FAMILY AND MEDICAL LEAVE ACT RETALIATION**

123.   Plaintiff incorporates herein the previous averments as if fully set forth.

124.   From 2019 Plaintiff attempted to exercise Plaintiff's rights under the FMLA.

125.   The FMLA and regulations promulgated thereunder prevent an employer from discriminating against employees who have exercised rights and/or have attempted to use FMLA leave. 29 U.S.C. §2615(a) (2); 29 C.F.R. §825.220(c).

126.   Defendants willfully violated the FMLA, and regulations promulgated thereunder in that it disciplined and discharged the Plaintiff because of Plaintiff's attempt to use FMLA leave, including but not limited to the following:

a. Failing to provide timely written notices to Plaintiff as required by the FMLA and regulations promulgated thereunder.

b. Unreasonably withholding approval and/or authorization of Plaintiff's request for medical leave.

c. Failing to effectively communicate with Plaintiff regarding the status of FMLA requests and need for treatment.

d. Failing to follow normal procedures with respect to the processing of a leave request pursuant to the FMLA.

e. Discouraging Plaintiff from utilizing FMLA, including but not limited to disciplining and discharging after notice or requests for assistance.

f. Denying Plaintiff's reinstatement and/or restoration that Plaintiff would have been entitled to under the FMLA.

g. Discharging Plaintiff's employment without cause.

h. Discharging Plaintiff's employment without cause to deprive Plaintiff of FMLA leave for mental health treatment.

i. Denying Plaintiff's health and other fringe benefits to which Plaintiff was entitled throughout the duration of FMLA leave.

127.   Defendants willfully violated Section 29 U.S.C. §2615(a)(2) in that it discharged, discriminated, and/or retaliated against Plaintiff as a result of

Plaintiff's notice of need for FMLA leave or attempt to use FMLA leave, as more fully set forth above.

128.   Defendants' acts and omissions, and conduct as more fully described above, were knowing and willful.

129.   Defendants' acts and omissions, as more fully described above, were performed in bad faith and without a reasonable basis thereby rendering Defendants liable for liquidated damages pursuant to the FMLA, and claim is made therefor.

130.   As a result of Defendants' violation of the FMLA, as more fully described above, Plaintiff is entitled to back pay and wages together with interest thereon pursuant to the FMLA, and claim is made therefor.

131.   As a result of Defendants' violations of the FMLA, as more fully described above, Plaintiff is entitled to be reinstated to Plaintiff's position, or to front pay and benefits, pursuant to the FMLA, and claim is made therefor.

132.   Plaintiff is further entitled to recover attorney fees, expert witness fees, and other costs related to the instant matter pursuant to the FMLA, and claim is made therefor.

133.   The demotion, discipline and discharge of Plaintiff's employment constitutes an adverse employment action.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on his Causes of Action as specified below.

134.   The Plaintiff prays that the Court award monetary relief as follows:

135.   On Plaintiff's Causes of Action, order Defendants to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under Section 1981/ADA/Title VII and/or PHRA, where and as applicable, and in an amount to be proven at trial.

136.   The Plaintiff prays that the Court award costs, expenses, and attorneys' fees, payable by Defendants where and as applicable, by determining that the Plaintiff is a prevailing party on Causes of Action and thereupon awarding the Plaintiff reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

137.   Further, the Plaintiff prays that the Court award monetary relief as follows:

138.   The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

139.   The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period to assure that the Defendants have fully complied with the remedies to the greatest extent practicable.

140.   The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation, and punitive damages as applicable under Plaintiff's respective causes of action where and as applicable to the named Defendants.

141.   The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated:  October 25, 2021                    Respectfully submitted,

                                            DONHAM LAW

                                            *By: /s/ Jeremy A. Donham, Esquire*
                                            Jeremy Donham, Esquire
                                            Attorney I.D. No. 206980
                                            PO Box 487, Dellslow, WV 26531
                                            717.881.7855 (ph) 888.370.5177 (fax)